**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **NANCY BUSH**, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CV-11-BE-2614-KOB** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social** ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On September 11, 2007, the claimant, Nancy Bush, applied for supplemental security income under Title XVI of the Social Security Act. (R. 103-110). The claimant alleges disability commencing on August 15, 2005, because of asthma, bronchitis, and arthritis. (R.165). The Commissioner denied the claim both initially and on reconsideration. (R. 63-65). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on June 26, 2009. (R. 28-59). In a decision dated December 8, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and, thus, was ineligible for supplemental security income. (R. 14-23). On May 20, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

1

## II.  ISSUES PRESENTED

The claimant presents two issues: (1) whether the ALJ erred by concluding that the claimant does not suffer from a severe impairment or combination of severe impairments by failing to consider the claimant's medically determinable impairments in isolation or in combination as required under step two of the sequential process; and (2) whether the ALJ committed reversible error by according more weight to the opinion of Dr. Marcus Whitman, a non-examining physician, while rejecting the opinions of Dr. Jack Zaremba and Dr. Adam Ross Nortick, consulting physicians.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No. . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its

entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

To establish disability, the claimant has the burden of proving the first three steps: namely that (1) she is not engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, and (3) her impairment or impairments meet or exceed the criteria in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant cannot prove that she has a listed impairment, she must prove alternatively that she is unable to perform her previous work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). Once the claimant shows that she cannot perform her previous work, the

3

burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d at 1228.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); 20 C.F.R. § 404.1529.

As a general rule, the opinion of an examining physician is usually entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985). However, in evaluating physicians' opinions, "the [ALJ] may reject any medical opinion," including that of a treating and consulting physician, "if the evidence supports a contrary finding." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). If the evidence supports such a contrary finding, the ALJ must articulate specific reasons for rejecting the treating or consulting physician's opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

## V. FACTS

The claimant received education through the seventh grade and was forty-three years old at the time of the administrative hearing. (R. 32-33). Her previous work experience includes employment as a clerk in thrift stores, a cashier, and a cook in various fast food restaurants. (R. 137-143). The claimant originally alleged she was unable to work because of arthritis, bronchitis,

4

asthma, and left leg pain. (R. 165). During the administrative hearing, however, the claimant testified that she suffered from scoliosis, shoulder arthritis, migraine headaches, and leg and back pain. (R. 17-18, 35-40, 47). According to the claimant, her pain and related problems began to interfere with her work in August of 2006. (R.165).

*Physical Limitations*

On July 21, 2003, the claimant presented to Birmingham Health care for the Homeless (BHCH) because of right knee pain. The examination revealed right knee crepitus; however, the claimant had normal range of motion and no swelling. Mr. David Slabaugh, treating family nurse practitioner, diagnosed the claimant with osteoarthritis. The claimant received instructions to use ibuprofen along with an ACE wrap for her right knee. The claimant returned to the BHCH on August 7, 2003, with complaints of right knee pain and lower leg pain. During the examination, the claimant had a normal gait, and the Drawer and McMurray tests were negative.[1] Dr. Julie A. Boll, treating family physician, prescribed Naprosyn 250mg for the claimant's pain. (R. 235-39).

On November 17, 2003, the claimant presented again to the BHCH; however, this time the claimant complained of *left* knee pain. The left knee exam showed no evidence of edema, effusion, or crepitus. The claimant's Drawer and McMurray signs of the left knee were also negative. Dr. Boll indicated that the claimant should begin a low fat diet to decrease her obesity. (R. 227-28).

The claimant complained of bi-temporal headaches on June 29, 2004 at the BHCH. The claimant indicated that the headaches occur three times a day and that ibuprofen relieves the pain. The examiner at the BHCH suspected that the claimant experienced tension headaches. The

---

[1] A negative result for the McMurray test indicates no signs of a meniscus tear in the right knee, and a negative result for the Drawer test indicates no signs of a rupture of the cruciate ligaments in the right knee.

claimant returned to the BHCH on November 15, 2005, with complaints of headaches, weakness, and left leg and knee pain. The claimant reported that ten to twelve aspirins did not alleviate her headaches. The diagnostic impression included migraine headaches. The examiner at BHCH prescribed Tylenol Sinus for the claimant's nasal congestion, along with Flonase and Elavil. (R. 220-22).

On August 12, 2007, the claimant presented to the emergency room at UAB Hospital after a fall. The claimant reported lightheadedness before the fall; however, she could not identify any additional reasons for falling. Dr. David C. Pigott, emergency room physician, noted that the claimant had a productive cough and coarse breath sounds on the right anterior chest. Dr. Pigott ordered x-rays for the claimant's chest; however, the x-rays showed normal results. During the physical examination, the claimant had an oxygen saturation rate of 98%. Dr. Pigott ordered IV fluids and Tylenol for the claimant's dehydration. (R. 211-13).

The claimant returned to the BHCH on October 25, 2007, with complaints of asthma, bronchitis, chest pain, spasmodic coughing, shortness of breath, fever, and chills. The medical notes indicate that the claimant smelled strongly of cigarette smoke. The examination revealed signs of bilateral crackles, wheezes, and rhonchi, and the claimant's diagnosis consisted of COPD. The claimant received prescriptions for a ProAir inhaler and antibiotics. (R. 275).

Dr. Jack L. Zaremba, consulting internist, examined the claimant on November 20, 2007. At the time of the examination, the claimant complained of left and right knee pain. On a scale of one to ten, the claimant stated that her left leg pain reached a level ten. According to the claimant, this severe pain interfered with her ability to walk and stand. The claimant indicated that she can stand for only fifteen to twenty minutes because of the knee pain. Furthermore, the claimant alleged

that her back pain prevents her from sitting for longer than thirty minutes. The claimant also confirmed that she continues to smoke a half pack of cigarettes each day. (R. 270-71).

During the physical examination, Dr. Zaremba noted that the claimant experienced shortness of breath, left and right knee pain, back pain, and left shoulder pain. More specifically, the claimant could not perform the "heel and toe walk," and Dr. Zaremba observed the claimant walking with a limp. (R. 271). Despite the claimant's shortness of breath, Dr. Zaremba's examination revealed that the claimant's lungs and respiratory systems were clear. Dr. Zaremba further noted that claimant had normal range of motion during the exam. (R. 268-69). Dr. Zaremba diagnosed the claimant with severe left knee pain consistent with degenerative disease or internal derangement of the left knee, arthralgia of the right knee, mechanical low back pain with sciatic radiation in the lower left extremity, and left shoulder bursitis. (R. 271).

On November 26, 2007, Dr. Marcus Whitman, non-examining orthopedic surgeon, reviewed the claimant's medical records to provide a disability determination. Dr. Whitman's notes state that the claimant experiences "occasional episodes of bronchitis, but there is no MDI for COPD." According to Dr. Whitman, the claimant experienced significant left knee pain that caused the claimant to limp. Dr. Whitman requested x-rays of the claimant's left knee and lumbar spine. (R. 274).

The claimant had x-rays of her left knee and lumbar spine performed on January 1, 2008. The x-ray of the claimant's knee showed no evidence of soft tissue calcification or significant swelling. The claimant's bone and joint structures in her left knee were reported as normal. The lumbar spine x-ray also revealed a normal SI joint, and no evidence of a structural defect. (R. 273).

On January 25, 2009, the claimant presented to the emergency room at St. Vincent's Hospital

with complaints of left and right knee pain. (R. 196). The claimant attributed the bilateral knee pain from standing and walking for the past two weeks at her job. (R.198). Dr. George L. Joe, emergency room physician, examined the claimant's knees. The examination revealed some bony tenderness to the knees; however, the examination showed stable ligaments, normal gait, and an intact motor. (R. 198-99). The claimant's diagnosis consisted of arthralgia pain of both knees, and the claimant received an injection of Toradol along with prescriptions for Lortab and Motrin. (R. 202).

Following the ALJ hearing, Dr. Adam Nortick, consulting emergency medicine physician, examined the claimant on July 20, 2009 at the request of the ALJ. At the time of the examination, the claimant alleged bilateral knee pain and low back pain commencing in 2005. The claimant further described her back and knee pain as "extremely troublesome," but the claimant indicated that she "gets around the community independently." In assessing activities of daily living, the claimant reported that she could sit in a "comfy" chair for thirty minutes, go shopping in the mall, ride in a car for two hours, and carry a bag of groceries. (R. 284-86). Dr. Nortick's examination revealed that the claimant could squat three times and stand on her toes or heels. (R. 289). The claimant's motor strength measured a level five on a scale of one through five. (R. 291). However, Dr. Nortick noted that the claimant only had ten degrees of flexion for her lumbar range of motion. Furthermore, the claimant's knee range of motion included left knee flexion of 140 degrees and right knee flexion of 132 degrees. (R. 292). Dr. Nortick's diagnosis included asthma, headache disorder, and non-specific knee and back pain. (R. 295).

Dr. Nortick also completed a Medical Source Opinion (MSO) at the request of the ALJ. Dr. Nortick's MSO of the claimant states that the claimant can sit for six hours under an eight hour work

day, and that the claimant can stand and walk for twenty minutes. Furthermore, the claimant can occasionally lift up to ten pounds, climb stairs, balance, stoop, kneel, crouch, and crawl. Under the activity section of the MSO, Dr. Nortick affirmed that the claimant can shop, walk without assistance, use public transportation, prepare meals, and sort files. However, despite these findings, Dr. Nortick determined the claimant to be disabled. (R. 278-283).

*The Administrative Hearing*

After the Commissioner denied the claimant's application for supplemental security income, the claimant requested a hearing before an ALJ. (R. 76-77). At the hearing, the claimant testified that her pain, on a scale of one to ten, reaches a nine when the claimant takes Tylenol. (R. 39-40). According to the claimant, her left knee pain caused her to leave work because the she cannot stand on her feet for more than five to ten minutes. (R. 35, 39). The claimant further indicated that the curvature in her spine causes back pain, which prevents the claimant from sitting longer than three to five minutes. (R. 35). The claimant testified that her back pain in conjunction with left leg swelling, requires her to lie down for a couple of hours each day. Referring to her previous job as a cashier at Crystal, the claimant stated: "They had me standing on my feet all the time. When I tried to sit down the pain was so bad. I couldn't take it no more." (R. 36). The claimant also verified that she has not tried to work since her last job at Crystals in January of 2009. (R. 52-53).

The claimant further testified that she experiences problems with her left shoulder and both hands. As a result, the claimant described how she can lift a glass of ice tea without difficultly. Although, the claimant can lift a gallon of ice tea out of the refrigerator, she must immediately set it down because of the pain. The claimant attributed her back pain from the curvature of her spine. (R. 35-39).

The claimant confirmed that she is homeless and living in an abandoned house even though the claimant has ten children. (R. 40). According to her testimony, the claimant woke up most days around 5:00 A.M at the abandoned house. The claimant then walks to a library, where she spends the majority of her day reading children's books. The walk to the library requires the claimant to rest and sit after each half block because of her back and left knee pain. At noon, the claimant eats lunch at a soup kitchen provided by Grace Episcopal Church before returning to the library for the remainder of the day. In the evening, the claimant stated that she returns to the abandoned house to sit and sleep on a few blankets on the floor. (R. 46-49). On the weekends, the claimant described how she will sometimes walk to her sister-in-law's house to get food or attend church. The walk to the sister-in-law's house usually takes approximately twelve hours to walk eight to ten miles. (R. 51).

The claimant further confirmed that she continues to smoke a half pack of cigarettes when she can afford them or when the clamant's daughter brings her a pack of cigarettes. The claimant verified that she spends $15.00 to $20.00 a week on cigarettes. The claimant testified that her bronchitis and breathing problems continue to worsen because of the heat and that she "can hardly breathe sometimes." In addition to the physical pain, the claimant stated that she suffers from migraine headaches. However, when asked what is the main reason why the claimant cannot go to work, the claimant responded that the main reason is from her left leg pain and back pain. (R. 50-53).

Daniel Canard, a vocational expert, offered testimony on (1) the claimant's ability to return to previous work, and (2) the type and availability of jobs the claimant could feasibly perform. The ALJ posed a hypothetical individual of the claimant's age, education, work experience, and

background who is limited to simple, non-complex jobs that provide an eight-hour work day with customary breaks. The ALJ also included the claimant's breathing problems in the hypothetical that would require an individual to work in an environment free of dust, fumes, gases, and humidity. According to Mr. Canard, these limitations would not preclude the claimant from returning to prior work as a thrift store clerk. However, Mr. Canard stated that the humidity limitation would prevent the claimant from returning to her prior work at the fast food restaurants because of the hot temperature in the kitchens. Mr. Canard then noted that the claimant would need to be able to stand, walk, or sit for approximately six hours to perform work at the thrift store. (R. 55-56).

Mr. Canard further testified that the hypothetical individual could perform the functions of any number of light, unskilled jobs, including those of a packager of small parts, a maker of semiconductor wafers, and a document preparer in the industry preparing documents for microfilming or scanning information into a computer. According to Mr. Canard, work at each of these jobs is available in both the regional and national economies. (R. 57).

The ALJ then modified the hypothetical, to include the claimant's pain that requires her to lie down for a couple of hours throughout an eight-hour work day. Mr. Canard indicated that the modified hypothetical would preclude the claimant from working at all jobs originally identified in the regional and national economies based on the claimant's age, education, and work experience. (R. 58).

Mr. Charles Tyler Clark, the claimant's attorney, asked Mr. Canard additional questions based on Dr. Zaremba's report that concluded that the claimant has severe left knee pain that interferes with the majority of the claimant's ambulatory activity. Dr. Zaremba's report further indicated that the claimant's pain limits her from bending, lifting, and prolonged sitting. Based on

11

Dr. Zaremba's diagnosis, Mr. Clark then asked Mr. Canard whether an individual who regularly experiences severe pain at a seven or eight level on a scale of one through ten would preclude the individual from working at most jobs. According to Mr. Canard, persistent pain at that level would preclude any of the claimant's past work, as well as any other gainful employment. (R. 58-59).

*The Administrative Decision*

On December 8, 2009, the ALJ issued a decision finding the claimant not disabled under Sections 216(I) and 223(d) of the Social Security Act. (R. 14-23). The ALJ's findings of fact and conclusions of law followed the five-step legal standard outlined in 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ found that the claimant had not engaged in any substantial gainful activity since the alleged onset of her disability. Next, the ALJ found that the claimant's recurrent bronchitis and sinus/tension headaches qualify as medically determinable impairments. The ALJ then determined that these impairments do not singly or in combination manifest the specific signs and diagnostic findings required for a severe impairment to limit the claimant's ability to perform basic work related activities for twelve consecutive months. (R. 16).

In support of this conclusion, the ALJ authored an exhaustive time line of the claimant's relevant medical history, carefully noting that each objective medical test performed failed to confirm the claimant's alleged symptoms. (R. 21). The ALJ considered the claimant's subjective complaints including bilateral knee pain, back pain, chronic bronchitis, asthma, headaches, and COPD. (R. 16, 18, 21). The ALJ set out a two-step process to determine (1) whether the claimant's medically determinable physical impairments can be supported by medically acceptable clinical and laboratory diagnostic findings; and (2) whether an underlying physical impairment could reasonably be expected to produce the claimant's alleged symptoms based on the intensity, persistence, and

12

limiting effects on the claimant's ability to perform basic work activities. (R. 17). The ALJ referenced how the objective medical evidence of record does not support or confirm the claimant's alleged symptoms. For example, the claimant alleged severe back pain and left knee pain; however, the examinations failed to show any evidence of atrophy, effusion, or edema. (R. 21).

The ALJ also referenced how the claimant's subjective limitations are self-contradictory and often conflict with the evidentiary findings. (R. 22). For instance, the claimant alleged that she can only sit for fifteen to twenty minutes; however, the claimant testified during the ALJ hearing that she spends up to five hours sitting in a public library. (R. 22, 47). The ALJ further noted inconsistencies when the claimant told Dr. Zaremba that she had fallen many times as a result of weakness in her legs; however, the claimant denied any falls or weakness in her legs to Dr. Nortick. Similarly, the ALJ acknowledged that the claimant's purported sedentary lifestyle conflicted with the claimant's muscle strength determined by Dr. Nortick along with the claimant's statement that she "gets around the community independently." (R. 22).

The ALJ then addressed the opinion evidence of record. The ALJ rejected Dr. Nortick's physical medical source statement (MSS) because the statement contradicted with Dr. Nortick's findings during the claimant's examination. More specifically, the ALJ noted how the MSS indicated that the claimant can only stand and walk for a total of twenty minutes throughout an entire eight-hour work day. The MSS directly conflicted with the claimant's statements during the examination that she can mow a lawn, go shopping, walk three aisles at Wal-Mart, and stand in a line for thirty minutes. (R. 22). Furthermore, the ALJ thought that Dr. Nortick's MSS relied solely on the claimant's subjective complaints. The ALJ further rejected Dr. Nortick's narrative report because the diagnosis consisted of non-specific back and knee pain without any objective medical

13

evidence to support a finding of a medically determinable impairment.

The ALJ also rejected Dr. Zaremba's opinion. Dr. Zaremba's diagnosis of the claimant consisted of degenerative disease or internal derangement of the left knee that interferes with the claimant's ambulatory activities. However, the ALJ then noted that the claimant's x-rays, all producing normal results, disproved Dr. Zaremba's diagnosis. The claimant's back x-ray failed to show any medically determinable impairment that would cause the claimant to suffer from sciatica, as alleged by Dr. Zaremba. Likewise, the x-ray results for the claimant's left knee portrayed no evidence of degenerative changes or instability of the knee. (R. 22). As a result, the ALJ rejected the opinions of both Dr. Zaremba and Dr. Nortick on the basis that the opinions are either disproved or inadequately based on the claimant's subjective statements with no objective medical evidence.

The ALJ's decision relied heavily on the opinion of Dr. Whitman, the State agency medical consultant, who determined that the medical evidence failed to support a finding that the claimant suffers from COPD. The ALJ afforded Dr. Whitman's opinion significant weight because Dr. Whitman's opinion is consistent with the medical evidence of record. (R. 22).

The ALJ ultimately concluded that the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities. (R. 23). Under SSR-85-28, the ALJ listed some examples of basic work activities, which include physical functions such as walking, standing, sitting, lifting, or handling along with the ability to use judgment and deal with changes in the workplace. The ALJ recognized the claimant's medically determinable impairments of recurrent bronchitis and sinusitis/tension headaches; however, these impairments do not amount to a severe impairment or combination of impairments as required at step two of the sequential evaluation process. As a result, the ALJ determined that the claimant is not disabled;

therefore, the claimant is capable of performing basic work-related activities. (R. 16-17).

## VI. DISCUSSION

**I. Whether the ALJ erred by concluding that the claimant does not suffer from a severe impairment or combination of severe impairments by failing to consider the claimant's medically determinable impairments in isolation or in combination as required under step two of the sequential process.**

The claimant contends that the ALJ failed to consider the claimant's medically determinable impairments in combination or in isolation as required under step two of the sequential process. The court finds that the ALJ appropriately considered the claimant's medically determinable impairments in isolation and in combination to determine that the claimant does not suffer from a severe impairment or combination of severe impairments. As such, the ALJ properly concluded that the claimant is not disabled.

Under step two of the sequential process, the ALJ must determine whether a claimant has a "severe" impairment or combination of impairments that causes more than a minimal limitation on a claimant's ability to function. *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993). When a claimant has alleged several impairments, the ALJ has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). The claimant bears the burden at the second step of the sequential evaluation of proving that she has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The Eleventh Circuit has determined that "an impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."

*Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

The ALJ concluded that the claimant's medically determinable impairments consist of recurrent bronchitis and sinus/tension headaches. The ALJ set out a two-step process to determine (1) whether the claimant's medically determinable physical impairments can be supported by medically acceptable clinical and laboratory diagnostic findings, and (2) whether an underlying physical impairment could reasonably be expected to produce the claimant's alleged symptoms based on the intensity, persistence, and limiting effects on the claimant's ability to perform basic work activities. The ALJ considered the claimant's alleged symptoms and medical problems including headaches, bilateral knee pain, back pain, bronchitis, scoliosis, shoulder arthritis, and COPD in combination and in isolation.

The ALJ then listed and considered certain basic work activities necessary to do most jobs provided under Social Security Ruling 85-28. As a result, the ALJ concluded that the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities, such as walking, standing, sitting, speaking, and understanding simple instructions. The sequential process ended at step two because the claimant could not prove that she suffers from a severe impairment that significantly limits her ability to perform basic work activities. Therefore, the ALJ correctly determined that the claimant is not disabled.

**II. Whether the ALJ committed reversible error by according more weight to the opinion of Dr. Marcus Whitman, a non-examining physician, while rejecting the opinions of Dr. Jack Zaremba and Dr. Adam Ross Nortick, consulting physicians.**

The claimant also argues that the ALJ committed reversible error by rejecting the consulting opinions of Dr. Nortick and Dr. Zaremba, while according more weight to the opinion of Dr. Whitman, the non-examining physician. In evaluating the opinion evidence provided by physicians,

the ALJ considers various factors, including the physician's relationship to the claimant, the physician's speciality, whether the physician's opinion is supported by evidence, and whether the physician's opinion is consistent with the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). As a general rule, the opinion of an examining physician is usually entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). However, an ALJ can rely extensively on a non-examining physician's opinion where substantial evidence supports the ALJ's rejection of the treating and consulting physicians' medical opinions. *Flowers v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 735, 742 (11th Cir. 2011).

The Eleventh Circuit has determined that the Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985). In *Crawford v. Commissioner*, the Eleventh Circuit plainly articulated that "the testimony of a treating physician must be given substantial or considerable weight *unless 'good cause' is shown to the contrary*." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis*, 125 F.3d at 1440) (emphasis added). Courts have identified "good cause" to diminish the opinions of treating physicians when such opinions were "not bolstered by the evidence, or where the evidence supported a contrary finding." *Lewis*, 125 F.3d at 1440 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)). Likewise, courts have found "good cause" when the treating physicians' opinions were "conclusory or inconsistent with their own medical records." *Id.* (citing *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)).

Although the ALJ discredited the opinions of Dr. Nortick and Dr. Zaremba, the ALJ's opinion specifically stated he rejected those opinions based on substantial evidence and good cause. In *Flowers v. Commissioner of Social Security*, the court addressed a similar issue of whether the

ALJ properly rejected the opinions of examining and treating physicians and instead relied on the opinion of a non-examining physician. *Flowers*, 441 Fed. Appx. at 740. The court in *Flowers* affirmed the ALJ's decision to discredit the treating and consulting physicians' opinions because the ALJ provided good cause for rejecting the opinions. *Id.* at 741. As a result, the ALJ relied heavily on the non-examining physician's opinion because the opinion "was consistent with the treating and consulting physicians' underlying clinical findings." *Id.* at 742. Therefore, the court in *Flowers* concluded that an ALJ can rely extensively on the non-examining physician's opinion when substantial evidence supports the ALJ's decision to reject the treating and consulting physicians' opinions, even though the ALJ is usually required to accord more weight to the treating and consulting physicians. *Id. See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) (concluding that the ALJ properly relied on the consulting, non-examining doctor's opinion because it was not inconsistent with the results of the tests administered by the examining doctor).

In the present case, the ALJ properly rejected the opinion of Dr. Zaremba because the claimant's x-rays disproved Dr. Zaremba's diagnosis that the claimant suffered from degenerative disease or internal derangement of the left knee. Likewise, the ALJ properly rejected the MSO of Dr. Nortick because his responses conflicted with his evaluation results that the claimant can shop, prepare meals, and walk without assistance. Likewise, Dr. Nortick's narrative report provided no objective medical evidence to support any medically determinable impairment related to the claimant's back or knee pain. The ALJ's opinion exhaustively recites the body of evidence contrary to the opinions and diagnosis established by Dr. Zaremba and Dr. Nortick. As a result, the ALJ relied heavily on the opinion of Dr. Whitman, the non-examining physician. Dr. Whitman concluded that the claimant's bronchitis episodes did not support a finding that the claimant suffers from

COPD. As a result, the ALJ relied on Dr. Whitman's opinion in addition to the claimant's normal x-ray results of her back and left knee.

Based on the substantial evidence discussed above, this court finds that the ALJ relied on good cause in diminishing the weight afforded to the opinions of Dr. Zaremba and Dr. Nortick. Substantial evidence also supports the ALJ's application of the claimant's medically determinable impairments at step two of the sequential process. As a result, this court finds that the evidence adequately supports the ALJ's conclusion that the claimant is not disabled. This court, like the ALJ, acknowledges that the claimant suffered various medical conditions; however, the weight of the evidence does not support a finding of any identifiable, sustained limitation that prevents all work activity.

## VII. CONCLUSION

For the reasons stated, this court concludes that substantial evidence and good cause supports the decision of the Commissioner and it is due to be AFFIRMED. The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 21st day of May, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE